**Stephen R. POWERS, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 82S00–9706–CR–00389.**

Supreme Court of Indiana.

July 8, 1998.

---

Barry L. Standley, Evansville, for Appellant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

Defendant Stephen R. Powers was tried before a jury and found guilty of Murder.[1] Following the recommendation of the jury, the trial court sentenced defendant to life imprisonment without parole.[2]

Defendant appeals his conviction. The life sentence gives this Court jurisdiction over his direct appeal.[3] We affirm.

### Background

In January of 1996, defendant was living in Evansville with his brother, David Powers, David's wife Tammy, and their three children. The youngest child, Kyran, was five months old. On January 22, 1996, Laura and John Riger visited David and Tammy Powers. Defendant was also there. At about 12:30 p.m., David and Tammy drove to Centertown, Kentucky to inspect the Rigers' trailer, which they were considering renting. The Rigers and defendant stayed with the children. Before leaving, Laura asked defendant if he would be okay with the children, and he assured her that he had babysat for them before.

Some time thereafter, defendant went out onto the porch and cried "My baby's dying, I need help!" A neighbor came over, observed that Kyran had blood and bruising on his face and was having difficulty breathing, and called 911. When emergency medical technicians arrived, they noticed dried blood around the baby's nostrils, bruising around the left eye, and that Kyran was laboring to breathe. There was a hematoma the size of a baseball at the right parietal area of his skull. His pupils were fixed and deviated to the left; he was unresponsive, and appeared to be in shock. The emergency room physician that treated Kyran testified that he was near death with a severe head injury when he arrived at the hospital. His skull appeared crushed and was an abnormal shape. A CAT scan revealed a large skull fracture. Kyran was transferred by helicopter to Riley Hospital in Indianapolis, and died shortly thereafter.

Evansville police took a statement from defendant. He told them that he became annoyed and angry when Kyran began to cry, and struck him in the face with a baby bottle. He then hit Kyran in the back of the head with a metal toy car. When the child continued to cry, defendant lifted him up to shoulder level and dropped him to the floor. Kyran hit the floor head first. Defendant dropped Kyran two more times, and hit the child's head hard against the floor.

### Discussion

### I

Defendant contends the trial court committed reversible error by denying his proposed jury instruction on Voluntary Manslaughter as a lesser included offense of Murder.

In *Wright v. State*, 658 N.E.2d 563 (Ind. 1995), we set forth the proper analysis to determine when a trial court should, upon request, instruct the jury on a lesser included offense of the crime charged. We summarized the *Wright* analysis in *Horan v. State*, 682 N.E.2d 502, 506 (1997), *reh'g denied*, as follows:

> This analysis contains three steps: (1) a determination of whether the lesser included offense is *inherently* included in the crime charged; if not, (2) a determination of whether the lesser included offense is *factually* included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute existed whereby the jury could conclude the lesser offense was committed but not the greater. [*Wright*, 658 N.E.2d] at 566–67. If the third step is reached and answered in the affirmative, the requested instruction should be given.

■ We have previously concluded that Voluntary Manslaughter is an inherently lesser included offense of Murder. *See Horan*, 682 N.E.2d at 507. We therefore turn to

---

1. Ind.Code § 35–42–1–1 (1993).

2. Ind.Code § 35–50–2–9 (Supp.1995). Defendant does not challenge the appropriateness of this sentence of life imprisonment without parole and we express no opinion with respect thereto.

3. Ind. Const. art. 7, § 4; Ind.Appellate Rule 4(A)(7).

step three of the *Wright* analysis to determine whether defendant's proposed instruction should have been granted.

■ The trial court made the following comments relating to its decision to reject defendant's voluntary manslaughter instruction:

> ... The court is not going to allow the jury to consider voluntary manslaughter. The court finds that the evidence does not support that instruction. The court finds that the Court of Appeals opinions and the opinions of the Supreme Courts of many states have found it's a legal impossibility and incomprehensible to fathom or to think of a situation where an infant could sufficiently provoke an ordinary person to commit the act. This court agrees with that and that is reason why we're not going to send that to the jury. [sic] (R. 1206–08).

Where a trial court has made a factual finding on the existence or lack of a "serious evidentiary dispute," our standard of review is abuse of discretion. *Champlain v. State,* 681 N.E.2d 696, 700 (Ind.1997). We review the evidence accordingly.

■ The crime of Voluntary Manslaughter is distinguishable from Murder by the presence of the mitigating factor of sudden heat.[4] A trial court should grant the requested Voluntary Manslaughter instruction if the evidence demonstrates a serious evidentiary dispute regarding the presence of sudden heat. *Horan,* 682 N.E.2d at 507. To establish sudden heat, the defendant must show "sufficient provocation to engender ... passion." *Johnson v. State,* 518 N.E.2d 1073, 1077 (Ind.1988). Sufficient provocation is demonstrated by "such emotions as anger, rage, sudden resentment, or terror [that are] sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection." *Id.*

Defendant argues that Kyran's crying made him angry and his anger rose to the level of sudden heat. The evidence that defendant claims establishes sudden heat is contained in his statement made to police. Defendant told police:

> I went up to his baby bed and I heard him crying. Then I picked him up ... I guess I must have snapped at the time when I was picking him up that I hit him in the head with a bottle and he was crying ... And he started crying some more. I just threw ... uh ... dropped him on the floor. (R. at 64.)

When asked what he intended to do, defendant responded:

> ... when I picked him up he was still crying and I couldn't take it. I just snapped ... snapped! And I hit him in the head with the bottle and a car ... and that little toy car. Then ... dropped him on the floor. (R. at 81.)

■ Kyran's crying did not constitute the provocation necessary to qualify defendant's actions as "sudden heat." *See Patterson v. State,* 532 N.E.2d 604, 607 (Ind.1988) (an incident of bed-wetting by a six-year old child was insufficient provocation to give rise to sudden heat); *Robinson v. State,* 453 N.E.2d 280, 283–84 (Ind.1983) (three-year old child wetting the bed and refusing to respond to questioning by parents "clearly not sufficient provocation" to give rise to sudden heat). *See also Commonwealth v. Azar,* 32 Mass.App.Ct. 290, 588 N.E.2d 1352, 1364 (1992) (where defendant claimed he was entitled to voluntary manslaughter instruction because of evidence that 4 month old victim's crying "caused [him] to lose control of himself and take his daughter's life," the court held that "There was no evidence presented of provocation adequate to mitigate the crime of murder to manslaughter" (citations omitted)).

Defendant argues that a Voluntary Manslaughter instruction was required under our decision in *Hedrick v. State,* 430 N.E.2d 1150 (Ind.1982). Hedrick had been charged with

---

4. *Compare* Ind.Code § 35–42–1–1 (1993) ("A person who ... knowingly or intentionally kills another human being ... commits murder, a felony[,]") *with* Ind.Code § 35–42–1–3(a) (1993) ("A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.") "Sudden heat" is a mitigating factor that reduces a homicide from Murder to Voluntary Manslaughter. Ind.Code § 35–42–1–3(b) (1993).

Murder for the killing of an eleven-month old girl. The evidence showed that the child had been crying and had gotten out of bed, that Hedrick picked her up, shook her, and threw her back onto the bed. The child's head struck the wall, and she died. The jury convicted Hedrick of Voluntary Manslaughter. On appeal, Hedrick argued that there was insufficient evidence to support the conviction because there was no evidence of sudden heat. We affirmed the conviction, finding that "the jury could have inferred that appellant knowingly or intentionally killed the child and might have concluded that appellant became angry with the child and that this anger was sufficient to constitute 'sudden heat' under the circumstances." *Id.* at 1156–57.

Since the evidence in *Hedrick* showed that the appellant knowingly or intentionally killed the victim, it was sufficient to support a conviction for Murder or Voluntary Manslaughter. Our comment, on which defendant relies here, that the jury could have found sudden heat on the facts in *Hedrick*, was extraneous to our holding as the propriety of giving the instruction was not appealed in that case. To the extent that the comment suggests that an infant's conduct can provoke behavior which qualifies as sudden heat, it is overruled. *See Robinson v. State*, 309 N.E.2d 833, 845 (Ind.Ct.App.1974) ("it is beyond the capacity of our imagination to hypothesize any act of adequate provocation of which a fifteen-month old baby could be guilty"), *opinion modified on denial of reh'g*, 311 N.E.2d 461 (Ind.Ct.App.1974), *judgment affirmed by* 262 Ind. 463, 317 N.E.2d 850 (1974). *See also State v. Brown*, 836 S.W.2d 530, 553–54 (Tenn.1992) ("we believe that it is a virtual legal impossibility for a small child [4 years in this case] to commit an act [urinating and defecating on the floor] that would amount to provocation sufficient to make his subsequent death voluntary manslaughter rather than murder"); *State v. Taylor*, 452 N.W.2d 605, 606 (Iowa 1990) ("the prevailing view is that a child as young

as this victim [8 month's] cannot, as a matter of law, provoke a defendant in such a way as to reduce the crime to voluntary manslaughter");[5] *People v. Crews*, 38 Ill.2d 331, 231 N.E.2d 451, 453 (1967) (where defendant claimed that based on evidence presented there should have been a finding of voluntary manslaughter, the court concluded that "It is ludicrous, however, to suggest that a 'reasonable person' could have been provoked by the actions [turning on the hot water in the bath] of a 2–year–old child."); *State v. Vega*, 40 N.C.App. 326, 253 S.E.2d 94, 98 (1979) ("as a matter of law adequate provocation could not be found to exist so as to justify submission of voluntary manslaughter where the evidence showed that the defendant beat and abused a child unto its death").

The trial court did not abuse its discretion in refusing to instruct the jury on the lesser included offense of Voluntary Manslaughter.

II

Defendant next argues that the evidence presented by the prosecution was insufficient to support his conviction for murder.

To obtain a conviction for murder, the State must prove beyond a reasonable doubt that the defendant knowingly or intentionally killed the victim. Ind.Code § 35–42–1–1(1) (1993); *Davis v. State*, 635 N.E.2d 1117, 1120 (Ind.Ct.App.1994). Defendant was charged with knowingly killing Kyran. Defendant claims that the evidence introduced by the State does not support the conclusion that he acted knowingly.

When examining the sufficiency of evidence, we neither reweigh the evidence nor resolve questions of credibility; rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn from that evidence. *Deckard v. State*, 670 N.E.2d 1, 3 (Ind.1996). We affirm if, considering that evidence and those inferences, we find substantial evidence of probative value to support the judgment. *Minter v. State*, 653 N.E.2d 1382, 1383 (Ind. 1995).

---

**5.** In *State v. Taylor*, 452 N.W.2d 605, 606 (Iowa 1990), the defendant asserted on appeal that there was insufficient evidence to sustain a voluntary manslaughter conviction. The Iowa Supreme Court determined that the trial court's

finding of provocation was harmless error and affirmed the voluntary manslaughter conviction because there was sufficient evidence to show second degree murder.

To prove that defendant acted knowingly, the State had to prove that he was aware of a high probability that his conduct would result in death. Ind.Code § 35–41–2–2(b) (1993). In *Anderson v. State*, 681 N.E.2d 703, 708 (Ind.1997), this Court concluded that a reasonable jury could infer that the defendant knowingly killed the twenty-one month old victim from the severity of the beating, and from the defendant's age and size relative to the age and size of the victim.

■ Here, the State introduced evidence that defendant hit Kyran in the head with a baby bottle and a metal toy car, dropped him on his head three times from shoulder level, and banged his head hard against the floor. The emergency room physician that treated Kyran testified that he was near death with a severe head injury when he arrived at the hospital. His skull was crushed and was an abnormal shape. Kyran's skull had a fracture so large that brain tissue penetrated it.

Kyran was a five-month old child. Defendant was a grown man. A reasonable jury could conclude that defendant was aware of a high probability that beating an infant across the face and head and repeatedly dropping him on his head would result in his death. *See Anderson*, 681 N.E.2d at 708. *See also Pilarski v. State*, 635 N.E.2d 166, 172 (Ind. 1994) (evidence that defendant struck one-year old victim in the face five times sufficient to support murder conviction); *Kaufman v. State*, 496 N.E.2d 90, 91 (Ind.1986) (a knowing murder was proven with evidence that appellant intentionally squeezed, shook, and battered seven-month old child); *Horne v. State*, 445 N.E.2d 976, 978–79 (Ind.1983) (evidence that appellant struck thirteen-month old child several times because he was upset over its crying sufficient to support conviction for knowing murder).

### Conclusion

We affirm defendant's conviction for murder.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.