# IN THE COURT OF APPEALS OF IOWA

No. 24-0932
Filed December 17, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GEORGE ALAN DEASON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Shawn McPartland,
Judge.

        George Deason appeals his conviction and sentence for second-degree
murder.  **AFFIRMED.**

        Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, for appellee.

        Considered without oral argument by Badding, P.J., Buller, J., and Doyle,
S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2025).

**DOYLE, Senior Judge.**

George Deason challenges both the admissibility and sufficiency of the evidence showing he committed second-degree murder by causing the death of his mother, Elsie, by assaulting her between 8:30 p.m. on June 30 and 4:30 p.m. on July 1, 2020.  Initially, Deason claimed that people broke into the home he shared with Elsie, held him at gunpoint, and forced him to watch while they assaulted Elsie.  But Elsie told her daughter that there was no break-in and that Deason was her assailant.  Deason later admitted that he assaulted Elsie after she threatened to report his whereabouts to police during an argument over an outstanding warrant for his arrest in a probation revocation proceeding.

As a result of the assault, Elsie was hospitalized with severe injuries to her head and face, including multiple brain hemorrhages.  Because the injuries increased her risk of a hemorrhagic stroke, her doctors stopped administering blood-thinning medication prescribed for Elsie's preexisting medical conditions.  Elsie's overall health declined in the weeks that followed as she developed a blood clot in her right arm, a pulmonary embolism in her right lung, and pneumonia.  She died on July 23.  The State charged Deason with her murder.[1]  After a bench trial,

---

[1] The State initially charged Deason with first-degree murder, assault on a peace officer with a dangerous weapon, and interference with official acts with a dangerous weapon.  The court granted Deason's motion to sever the murder charge, and the State later amended the charge to second-degree murder.

the district court found that Deason committed second-degree murder. Deason appeals.[2]

### I. Sufficiency of the Evidence.

Deason first challenges the evidence showing he committed second-degree murder. The State was required to prove beyond a reasonable doubt that (1) Deason assaulted Elsie, (2) Elsie died because of the assault, and (3) Deason acted with malice aforethought. Deason does not challenge the finding that he assaulted Elsie. He challenges the evidence that Elsie's death resulted from the assault and that he acted with malice aforethought.

We review sufficiency-of-the-evidence claims for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "We review a claim of insufficient evidence in a bench trial just as we do in a jury trial." *State v. Meyers*,

---

[2] We note an apparent rules infraction. The "Statement of Facts" section of Deason's appellate brief states: "The necessary factual background may be found in the defense's Closing Brief [with citation to the trial court record]. Additional facts will be discussed when relevant." Iowa Rule of Appellate Procedure 6.903(2)(a)(6) provides an Appellant's brief shall contain a "Statement of Facts. A statement of the facts *reciting the facts* relevant to the issues presented for review. Each statement must be supported by specific references to the record in accordance with rule 6.904(4A)." (Emphasis added.) Deason did not recite any facts in this section of his brief. His incorporation by reference to his trial court brief is insufficient and inconvenient. And in any event, his thirty-one-page trial court closing brief contains conclusionary statements and arguments.

Although the rule concerning the statement of facts section is silent as to incorporation by reference, we believe the spirit of the rules prohibit use of such a device in the statement of facts section of an appellate brief. That spirit is evidenced by the rule that prohibits incorporation by reference any arguments or authorities in the argument section of an appellate brief. Iowa R. App. P. 6.903(2)(a)(8)(3) ("No authorities or argument may be incorporated into the brief by reference to another document."); *see also Wenck v. Am. State Bank*, No. 24-0457, 2025 WL 1824664, at *1, n.2 (Iowa Ct. App. July 2, 2025); *In re L.S.*, No. 23-1511, 2024 WL 111105, at *3, n.5 (Iowa Ct. App. Jan. 10, 2024).

Additionally, we note that the Deason's brief's "Certificate of Compliance With Type-Volume Limitation" is not complete. Iowa R. App. P. 6.903(1)(i)(4).

924 N.W.2d 823, 826 (Iowa 2019) (citing *State v. Weaver*, 608 N.W.2d 797, 803 (Iowa 2000)). In determining whether substantial evidence supports the verdict, we review all the evidence and record in the light most favorable to the trial court's decision. *Id.* Also, we are "highly differential" to the verdict and view the evidence and any reasonable inferences that we can draw from it in the light most favorable to the State. *See Lacey*, 968 N.W.2d at 800. If substantial evidence supports the verdict, we affirm. *See id.* Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *See id.* The fact that the evidence could support a different finding is irrelevant; the question is whether it supports the finding made. *See id.* 800-01.

**A. Causation.**

Although Deason admits that he assaulted Elsie, he claims that the assault did not cause her death. He notes that other factors like her age, health, and poor nutrition factored into her death. He also argues that pneumonia and pulmonary embolism were intervening and superseding causes of Elsie's death.

In a detailed twenty-five-page ruling, the district court reviewed the medical testimony and found beyond a reasonable doubt that Deason's assault led to Elsie's death. Although Elsie's brain hemorrhages did not directly cause her death, their treatment led to pneumonia and pulmonary embolism, which led to her death. This finding is consistent with the evidence. State Medical Examiner Dr. Dennis Klein testified that Elsie died from complications of a traumatic brain injury, an injury consistent with Deason's assault.

> [W]ith that brain injury, there were certain things that happened to the body where she's not up and walking around, that puts you at increased risk for a pneumonia.

When she did receive this traumatic brain injury, she was on a blood thinner called Coumadin, because she had old pulmonary emboli before, so doctors put her on this blood thinner to prevent a blood clot from forming in the legs.

Because she had bleeding around the brain, the risk is so high of having death from hemorrhagic stroke, that the doctors had to reverse that Coumadin. And as a result of that, that put her at increased risk in development of a [deep vein thrombosis], which is exactly what happened.

So but for that brain injury, these other complications would not have happened. . . .

*Q. So is it fair to say that but for this traumatic brain injury she would not have died in the manner that she did? A. Correct.*

(Emphasis added.) Dr. Klein stated that without the assault, Elsie's risk of developing a pulmonary embolism from her pre-existing conditions was "much less likely because she was on a blood thinner and she wouldn't have been at increased risk because of trauma and laying in bed." When viewed in the light most favorable to the State, substantial evidence supports the court's finding Deason's assault resulted in Elsie's death.

**B. Malice Aforethought.**

Deason also challenges the evidence that he assaulted Elsie with malice aforethought. Malice aforethought is "*a fixed purpose or design to do some physical harm to another existing prior to the act complained of.*" *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003) (citation omitted). There is no requirement for malice aforethought to exist before the act for a specific length of time; it is enough that the purpose was formed and continued at the time of the act. *See id.*

Because malice aforethought is a state of mind, it is typically proved with circumstantial evidence. *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003). "Evidence of bad feelings or quarrels between the defendant and the victim are circumstances that may be used to support a finding of malice aforethought." *Id.*

The law also allows the factfinder to presume malice aforethought when a deadly weapon is used. *Reeves*, 670 N.W.2d at 207. That presumption may be rebutted by evidence showing the killing was accidental, under provocation, or because of mental incapacity. *See id.*; *see also State v. Taylor*, 452 N.W.2d 605, 606 (Iowa 1990) (noting that killing another without malice aforethought is voluntary manslaughter); Iowa Code § 707.4(1) (defining voluntary manslaughter as causing the death of another "as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill"). "Although motive for the killing is not a necessary element of second-degree murder, absence of such motive may be considered on the question whether the defendant acted with malice aforethought." *Reeves*, 670 N.W.2d at 207.

There is substantial evidence from which the court could find Deason had malice aforethought when he assaulted Elsie. The evidence shows that Deason caused her serious injuries, including brain hemorrhages. The assault lasted long enough that Elsie covered her head so that Deason would stop beating her. Elsie's daughter described finding her "very badly" beaten and bloody with her eyes swollen shut and some of her hair missing. Elsie was in obvious pain, could barely speak, and was unable to move on her own.

Deason complains that Elsie's injuries do not show malice aforethought because they are largely a result of her pre-existing medical conditions. But as the State notes, "It can be true that Elsie was in poor health *and* that Deason assaulted

her maliciously." Unlike crimes perpetrated against strangers, Deason assaulted Elsie and caused debilitating injuries despite knowing her condition. Under the facts before us, we agree with the State's assessment that Elsie's age and health are militating factors rather than mitigating ones.

### C. Serious Provocation.

Deason also claims that his assault was a reaction to serious provocation, citing the testimony of Dr. Michael Flaum, a psychiatrist with over thirty years of experience who interviewed Deason. Dr. Flaum testified that Deason suffers from "intergenerational developmental trauma characterized by disorganized attachment." Dr. Flaum believes that Deason's belief that his mother and sister were conspiring to have him arrested triggered his assault on Elsie based on past trauma. Dr. Flaum testified that Deason is unable to rationally manage and regulate his response to that trigger. When faced with it, he disassociated and reacted without conscious thought.

The district court found several issues with Deason's claim of serious provocation. First, it found the version of events Deason provided Dr. Flaum were "false or otherwise lacked credibility." Second, "words alone, historically, have been insufficient to provide a factual basis for serious provocation." *State v. Thompson*, 836 N.W.2d 470, 478 (Iowa 2013). As the court added, any threat of Elsie alerting law enforcement to Deason's whereabouts reflected Deason's general concern about his own liberty and welfare rather than the kind of inflammation of a sudden, violent, and irresistible passion required for finding provocation. Finally, the court found no evidence showed that Deason did not have time to reflect and bring any passion under control before he assaulted Elsie.

Deferring to the court's credibility findings and viewing the evidence in the light most favorable to the State, we agree that Deason has not shown the necessary provocation to defeat a finding of malice aforethought.

**II. Evidentiary Challenge.**

Deason also contends that the district court abused its discretion by admitting into evidence two video exhibits of his apprehension as recorded by officer body cameras. "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Mulatillo*, 907 N.W.2d 511, 518 (Iowa 2018) (citation omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015) (citation omitted). If the district court abused its discretion, we reverse only if the evidence prejudiced the defendant. *See State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014).

"It is well-settled law that the act of avoiding law enforcement after a crime has been committed may constitute circumstantial evidence of consciousness of guilt that is probative of guilt itself." *State v. Wilson*, 878 N.W.2d 203, 211 (Iowa 2016).

> For evidence the defendant sought to avoid apprehension to be probative of his or her actual guilt with respect to the crime charged, the evidence must support a chain of inferences (1) from the defendant's behavior to avoidance of apprehension, (2) from avoidance of apprehension to consciousness of guilt, (3) from consciousness of guilt to consciousness of guilt concerning the crime charged, and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id.* at 212-13. Deason argues that the body camera videos do not support an inference of actual guilt concerning each element of the crime charged. Specifically, Deason argues that it does not support finding malice aforethought. The State argues that Deason did not raise this same argument below and thus cannot assert it for the first time on appeal. But even without considering the two exhibits Deason challenges on appeal, substantial evidence shows that Deason acted with malice aforethought at the time of the assault for the above reasons. We therefore affirm Deason's conviction of second-degree murder.

**AFFIRMED.**